Technologies. Pam, did you hear from him? No, he was here this morning. Was he here? Did he check in? He was here at the 12th. But you've not seen him in the courtroom? I have not seen him in the courtroom. He called and checked in at this, and he said he was in Illinois. Made his way from Illinois, but can't make it into the courtroom. We'll just go ahead, Mr. Hubbard. May it please the court, Brad Hubbard on behalf of the Appellate, on behalf of the Appellate, on behalf of the Appellate, on behalf of the Appellate, I'm going to read a passage from the legislation. Butler or Hubbard? Hubbard? Yeah. I'm so sorry. I apologize. Please let me know if you all can't hear me. I'm trying to do something different. On behalf of the Appellate, 1 Technologies, the strong presumption against waiving arbitration places a heavy burden on Forby that she cannot carry. She cannot show that 1Tech substantially invoked the judicial process, nor can she show prejudice. Both elements must be satisfied. This court should reverse because neither is. Mr. Hubbard, let me just tell you what I think the strongest argument against your position is, and you can comment. The CROA claim, the federal claim here, in my view, may arise out of the same sort of nucleus of operative facts as what I think of as the ICFA claim, the state law claim. So, why shouldn't we just follow what the court appeared to do in Sabatelli, which is our unpublished opinion, and just say, well, if the claim that you want to arbitrate arises out of the same nucleus of operative facts, then you waived it because you waived it as to the state law claim as well. Sure, Your Honor. Sabatelli is different in an important way because Sabatelli involved a plaintiff engaged in claim splitting. That is, the party seeking to arbitrate the new claim was the same party that, one, kept that new claim, quote, on the back burner during the prior litigation, and, two, quote, created an overlap between the two theories of recovery. Yeah, the back burner point, that's a good point. That goes to prejudice, I think. Right, Your Honor. And so in that case, the plaintiff there who brought the new claim later after the parties had fully litigated summary judgment waived its right to arbitrate because both claims involved the same factual issues, both claims involved the same legal issues, and they were actually litigated in that case. Here, there are different factual issues, and there are different legal issues. Well, do you have to prove different facts on a CROA claim than the state law claim? Yes, Your Honor. What? Absolutely. So the CROA claim, there's four different claims broader than CROA. The first is a fraud or deception claim, and that claim requires proof that there was fraud or deception in connection with the offer or sale of credit repair services as defined by the Credit Repair Organizations Act, by CROA. In addition, Forby alleges that One Tech improperly accepted free payment in advance of providing credit repair services, that One Tech failed to give the CROA-required disclosures about her credit file rights and her rights to cancellation under CROA, and finally that One Tech attempted to obtain a waiver of her CROA-guaranteed protections, and CROA was not mentioned in the original complaint, so none of those facts about whether One Tech is a credit repair organization were previously litigated. So the idea of waiver here, as I understand it, is we don't want to let a plaintiff sort of take a practice run at an issue in federal district court and then say, well, I had second thoughts, let me go arbitrate that, right? I mean, would you agree that you sort of get a practice run on some of the CROA claim, or not? I don't think so, Your Honor. Importantly, if you look at the allegations and you look at the way the complaint changed from the original complaint to the second amended complaint, there are new legal theories supported by new factual allegations, right? The complaint got 30% longer, it took Forby 20 new paragraphs to allege her CROA claim, the facts that were not in the original complaint, and the ICFA claim, the Illinois Act claim, was significantly narrower. It asked a simple question, as this court recognized during the last appeal, which was, did One Tech's website adequately disclose the terms of enrollment when Forby signed up? Isn't it fair to say that the big difference between the CROA and the ICFA claim is that there isn't what to do, A, B, C, D. ICFA is a post hoc statute. What you cannot have done, committed fraud or deception or whatever. That's absolutely correct, Your Honor, in that the prescriptive nature of CROA only applies if a defendant is a credit repair organization as defined by that act, and that is a legal issue that Forby concedes was not before the court in 2016 and 2017 when the prior litigation occurred, and she concedes that on page 34, note 17 of her brief. What's the best case from our circuit that's published that supports your view that we look at waiver of arbitration on a claim-by-claim basis? A couple of answers, Your Honor. First, the subway decision, which held that a party only invokes the judicial process to the extent it litigates a specific claim it subsequently seeks to arbitrate, and then this court's Cooper decision, it found that there was no waiver because the defendant didn't seek to obtain judicial relief on the same claim it sought to arbitrate. So then you apply a nice application of that principle, look at the Eleventh Circuit's Collado decision, which is almost materially indistinguishable from this case, and there the court held that waiver does not extend to previously unasserted claims because just as a defendant isn't required to litigate against potential but unasserted claims, the defendant does not waive its right to arbitrate previously unasserted. Let me ask you, Mr. Hubbard, so is your position that as long as it's a different cause of action, you know, has a different name to it? Mr. Hubbard, wait a minute. I'm sorry to interrupt, but there are some people who just made a shadowy appearance at the back door. Are those co-clerks? You fella, you came in at... Were those... Well, who are you? He's this guy? Yeah, he's the other side. It's Tim. Well, come on. We're up now. Yeah, well, Mr. Hubbard has done more than half of his oral argument because we waited for you to arrive in the courtroom. I can't hear you, I'm sorry. Well, first I was apologizing, is that it? Yes, sir. I was apologizing to you and the panel. Second, I didn't have it prepared. And I explained that I thought, I didn't think I was sentenced this afternoon, but in fact I am. Well, we'll catch you up. All right. I'm sorry to interrupt. No, no, it's fine. Just, I'll start back over. Thank you. Is your argument that, you know, Judge Duncan asked about the facts, are they the same nucleus? Is it your position the facts don't matter, that as long as it is a different cause of action under state, federal law, you know, with a different label, that that alone means you did not invoke the judicial process? Is it general matter, Your Honor? Yes, absolutely. Let me ask you a question then. So let's say you win, and we say that this new federal claim has to go to arbitration, but you acknowledge now that the state claim would continue in federal court in Dallas, correct? Yes, Your Honor. What's going to be the preclusive effect of whoever rules first if there are some overlapping issues? What would be the preclusive effect of, let's say, the arbitration rules first? Well, Your Honor, I think it turns on whether there is, whether the rules of preclusion would apply, that is, whether the same issue is decided. If the arbitrator rules that the CROA claims can't go forward because One Tech is not a credit repair organization, that would have no preclusive effect on the ICFA claim because whether One Tech is a credit repair organization under the federal act has no bearing. But if the arbitration or the district court rules first on the issue, which I still, you there's misrepresentations about whether these monthly fees are going to be charged, that would have preclusive effect because it's the same issue being decided in another proceeding. Yes, Your Honor, but it certainly wouldn't be outcome dispositive again because there must be fraud or deception in connection with the offer or sale of credit repair services as defined by the act. Let me ask a question on prejudice, which, and I don't think this was necessarily what was held below, but wouldn't it be, if you, again, if you prevail, it goes to have an arbitration and a district court involving at least some overlap. Isn't it prejudicial just the expense of having two proceedings and then as well the possibility that one's going to rule first and essentially decide the case for the other proceeding? I don't think so, Your Honor. For a number of reasons. First, before we had agreed to arbitrate all of the claims she had against us, and we now have sort of acceded to her preferred forum as to her Illinois Act claim, and she made the decision to add these new federal claims to this case, and now we are seeking to invoke our contractual right to arbitrate those new claims. And she's going, there's been no litigation of those claims in federal court yet, so there's no duplication as to what's happened thus far. How soon after the second amended complaint was, did your client file a motion to compel arbitration? Roughly two weeks, Your Honor. Okay. So here, right, as I just mentioned, One Tech moved to arbitrate those new federal claims as soon as they were first raised, and One Tech has done nothing to invoke the judicial process as to those claims. It simply doesn't matter that One Tech invoked the judicial process three years earlier by moving to dismiss the original complaint because, as this court noted, that complaint alleged only Illinois state law claims, and One Tech did not and could not have litigated Forbee's newly asserted federal Crow claims by seeking to dismiss her Illinois state law claims three years before those federal claims were first pleaded. As the Eleventh Circuit explained in the Collado case, this rule makes sense. In Collado, the Eleventh Circuit talks about the Krinsk decision, and that's a rule, I'm not sure we've adopted it in our circuit, about adding something, it's not a claim, but doing something in an amended complaint that unexpectedly changes. Is that a rule that's, I mean, I guess, have we accepted a rule like that, and is it even relevant to your case? Let me answer both of those questions in turn. First, I don't believe this court has accepted a rule like that, but perhaps more importantly for this case, it's simply not relevant. We don't press a revival argument on appeal. The impetus for that argument was that the second amended complaint also dramatically expanded the class definition, and that impetus was eliminated when the district court granted our motion to strike the class allegations over the summer. And so now we are focused solely on the new federal Crow claims, which have not been litigated by either party. So it's just Ms. Forby now? You know, I was on the last panel, and this is a big class action, and it seems like all kinds of people were involved. So now the class action is gone, is that right? Yes, Your Honor. We're talking about Ms. Forby's claim, two claims now, okay. And even if Ms. Forby could show that Wontek had substantially invoked the judicial process as her federal Crow claim, reversal is still required because Forby can't show prejudice. Instead, she argues that she doesn't need to, but that's wrong, as this court explained in the last appeal in this case. The party opposing arbitration must demonstrate prejudice before this court will find a waiver of the right to arbitrate. And as Judge Duncan, as we just discussed, there was no expense and no delay in the two weeks between the second amended complaint and when Wontek moved to compel those claims to arbitration. And as Judge Costa, as we have discussed, no one has checked the district court's temperature as to whether Wontek is a credit repair organization under that Federal Credit Repair Organizations Act, and so there's simply no second bite of the apple as to that question. And so, in sum, this court should reverse and compel Forby's newly asserted claims under the federal Crow to arbitration. Wontek has not litigated those claims, and Forby has not and cannot show prejudice. All right. Thank you, sir. You have time for a follow-up. Mr. Nelson? Am I correct that this suit is over $90? Is the suit over $90, ma'am? The suit is the dispute over $90 that she was automatically charged in increments of $29.95 on three months before one technology was canceled. Principally, yes, ma'am. Okay. Attorney's fees involved, for sure, and other things. Of course, under ICFA and Crow, if we're successful, potentially punitive damage as well, ma'am. Well, may it please the court. Good afternoon, counsel. Everyone has my apologies once again. I'll try to start fresh. My name is Dave Nelson. I represent the plaintiff, Ms. Forby, the appellee, of course. Thanks to this panel, by the way, for allowing me additional time. You postponed this argument so that I could recover from the surgery. I'm also thankful to counsel, particularly Mr. Brian Robinson, who's very gracious. So, Mr. Nelson, I'll start out with you, and I'll tell you what I asked the other side at the beginning. I said, look, the strongest argument I thought against their position is Crow and ICFA, same nucleus of operative facts. You know, why not say if there was a waiver of arbitration as to ICFA, why not a waiver as to Crow? So, on the flip side of that, it seems the strongest argument against your position is our circuit has talked about claim-by-claim waiver of arbitration, specific claims. Crow is a different claim. It's a federal claim, different elements, sort of a Judge Jones has pointed out. The law itself is somewhat different. It's a prescriptive statute, whereas the ICFA claim is sort of a general defraud, deception statute. So, why don't you lose on that basis? Why don't you lose on that basis? You didn't invoke—your opponent did not invoke the judicial process as to Crow because it's a different claim. Right. Well, we don't lose because inasmuch as this Court has spoken to the particular issue, it has done so in a different way. Here's where it hasn't done yet. It hasn't looked at the context of the plaintiff taking the action, namely filing an amended complaint, as opposed to focusing on what the defendant did or did not do. The cases that are in the Eleventh Circuit, as well as the cases here in the Fifth, tend to talk about instances where the defendant has taken some action. You focus on that. That, I think, is the important distinction. Of course, that leads me to suggest this is a case of first impression for this Court, at least mostly, and I'm going to ask this Court to adopt a new test. I'm humbly asking you to consider it might be a better test than the tests that have been articulated elsewhere in the other circuits and below in some state courts. So, what test do you think we should adopt? Well, Judge, I believe the test ought to be whether or not the amended complaint unexpectedly and materially changes the proof. Four parts. What does this have going for it? Well, first of all, I think it captures— Sir, give me an example of a lawsuit you—I know, it's horrible. Give me an example of a lawsuit you have filed where the amended complaint unexpectedly changes the proof. Oh. In other words, does your example mean anything at all? I was struggling with this idea of common nucleus of operative facts. One rarely has a lawsuit in which there are two nuclei coexisting. I'd like to take a technical note on one of them again, but I would say that the example of what I'm looking at asking for, again, is kind of a very, very different view than you can ask me, of course. But the case in which you talk about, oh, the nature of the common nucleus of operative facts, and you were complaining that there was a DR that was going on all the time. Well, gee, that really doesn't have much to do with the breach of fiduciary duty claim that was brought subsequently, along with the theft claim. I believe, Your Honor, that the things you're going to notice as you read these articulations or permutations on the test, they kind of have four elements. And I'm going to descend to grammar briefly. Let me give you an example of some that the court below, Magistrate Judge Tolliver and District Judge Lindsey, chose to use in the opinion anyway. So let's see, there's materially changes scope or theory of the claims. Unexpectedly alters nature dispute. Unforeseeably adds to core set of facts in the initial pleading. And I'm just going to, again, humbly suggest that this can be made more concrete for future litigants, for the court to apply, and so forth. You've got an adverb like materially and unexpectedly. You've got a verb like change or alter. You've got an object like the scope or theory, the nature of the case, the core set of facts, the shape of the case. There's a metaphor, the conduct of parties, particularly defendant. And then sometimes it's, I don't know if it's an indirect object or whatever, but you know. Let me interrupt your grammar lesson for a second, too. Thankful. Before you even get to what this test should be, aren't, you know, the other circuits test you're talking about, like the Eleventh Circuit and Krinsky, aren't those talking about a situation where an amended complaint so changes the theory of the case, or whatever you want to label it, that that allows the defendant to revive the entire arbitration right and bring everything into arbitration, even though they earlier waived that. Isn't that different than what they're trying to do now, which is just get this one new claim into arbitration? And shouldn't that smaller relief they're seeking have a less demanding test? Yes and no. Here's what I mean. You're quite right that what, well, first of all, let's acknowledge that, you know, you've got these different words, retention, rejuvenated, revived, rescinded, nullify. I don't know, but I think it calls for something more clear. I really like the choice used by counsel in their brief, which was retained. They retained their right as their claim, and I like that word, it fits, just as you were making that distinction, it fits here for sure. Should it, should the test be different? I don't think so, Your Honor. I would say no to that question. You know, we could talk about the particular facts of that case, call it SunTrust surprise. You know, that was the case that SunTrust was really surprised on account of the fact that the size of the class proposed went from a few hundred people who had sent a letter to defendant SunTrust in a small window of three and a half months, all the way to, well, the case talked about 56,000. Well, let me ask you a question here, because your prayer for relief is granting certification as a class action, and plaintiff and class members, you say, are entitled to the cost of their action, citing the CROA. Are you reviving your class action allegations? I had a note to tell you, Your Honor, that there's a third amended complaint on file, and that . . . Which gets rid of the class allegations? At the, on order of the district court, correct, and particularly, I think it's paragraph 45 that disappears. So there's no class allegation in the complaint that a lawyer's called operative complaint. There's an explanation for, there's a delay in getting us here, and the district court reconsidered, and that's how we end up in the state of affairs. When you talk about unexpectedly changes the scope, I think about prejudice there. So, does the unexpected part of your proposed test really go to the prejudice part, and not to the invoke the judicial process? Because there's two parts to a waiver, right? I agree completely. I see it the same way you do, Judge. The reason I like that adverb in there is unexpectedly, well, I think it prevents surprises, and none of us like surprises, well, except on your birthday, but you don't like surprises in the form of an, you know, an amended complaint. So, it's preventing surprises, it's protecting fairness. I mean, does it make sense in terms of arbitration, I'll ask the other side this too, for some, for a defendant to say, well, you've sued me on this state law claim, I've looked at it, I'm going to elect to go ahead in the federal court on this one. But then we get the federal claim, and for whatever reason they say, no, now we want to go to arbitration, does that make any sense in terms of the dynamics of arbitration, or not? Lawyer answer, it depends. Well, I want the lawyer answer. It depends, and it depends on, well, in effect, the strength, how much you value waiver as a jurisprudential doctrine, because what you give to defendants to reassert arbitration, you're going to take away from the doctrine of waiver itself. Why do we have waiver? Well, it prevents gamesmanship, we're told, and that sounds right. It provides, or protects against rather, or prevents re-litigation of the same claim, you know, get all the way to end of discovery and then go back and start all over again. That doesn't make sense. And in this case, I would say it's going to prevent, hopefully, duplicate litigation. You know, I'm saying these are the same claims we're going to litigate. Well, they are, I would say they're overlapping in some sense. That's a better sense. Okay, I think that's more accurate. So, given that they're not the same claim, that they're overlapping, that there's some elements in common, but there are other elements that are not, why shouldn't we just say, well, there's a strong presumption against waiver, and so we should apply that here by finding no waiver, as did the CROA. I'm going to retreat to that earlier response, which is you're going to weaken waiver, and you shouldn't. Waiver's a good, strong doctrine that should stay there. In this particular case, we're concerned about, you know, Ms. Forby runs a nonprofit in East St. Louis, Illinois, and so what we're concerned about is she's going to be litigating in federal court in Dallas, pretty far from her home, and she's going to be arbitrating in Dallas as well, and I have come prepared to talk to you about mapping the CROA claims back on the ICFA claims, sort of one for one, because I sincerely believe they match up nicely. Well, so how come you didn't join them in your original complaint? Oh, we wanted to be in our hometown. We wanted to be in state court. Do you mean why didn't we bring the CROA complaint? So why didn't you amend your complaint as soon as you got to Dallas, or got into federal court in Illinois? What was the second part of that, Judge? Why didn't you amend your complaint and add a CROA claim as soon as you got into federal court in Illinois? The dust has only just settled, Your Honor. We have filed this federal CROA claim at the time that seemed to make sense, but look, we've been on the defensive, as one might expect given the parties, from the get-go. Are you planning to appeal the dismissal of the class allegations? Because if otherwise it's just strange to me that this case, I mean, everyone coming to New Orleans costs so much more than the value of this claim, but I can see it's still a big deal if you're planning to appeal the class dismissal. I mean, Ms. Forby, you know, I'll state the obvious for the court. Ms. Forby can't find somebody to get her $90 back because no attorney in Belleville can afford to work off of a contingency or, you know. So what do you do? You scratch your head and you say, well, you know, we can give this a run. And so we added Illinois consumers. We tried to keep the case inside the state of Illinois, and we didn't. Okay. You know, your question gets to where are we going to end up in all this. I have an answer. I think we're going to, by hook or by crook, we're going to figure out that the CROA, they're a CROA, the CROA applies, and that's going to get rid of the arbitration clause.  How is that going to work? CROA applies and you get rid of the arbitration clause? Tell me how that argument goes. Well, I read, noting I could be wrong, I read CROA as saying you can't have an arbitration clause like the one you have in the operation you have running right now. So adding CROA then gives you that leverage, you're saying? That's a good way to put it. Okay. That would be for the arbitrator to decide. If there's no waiver, it would go to the arbitrator to decide if they are a credit repair organization. Yeah. It'll work. So I'd like to do my best to tell you that I gave you a test to consider, and I'd like to talk about the application of that test, which really does follow the law, as I said, that you've already been reading. Because I think I can persuade you that this proof is going to map on to the ICFA claim, even though we've added the CROA claim. I can be specific. I brought the second amended complaint up here, and I can talk the specific paragraphs even, but the heart of it in the amended complaint that I think is in front of you would be, for example, we start talking in paragraph 55 about ICFA, and then 56, the specifics of ICFA that we think have been violated by the company. And I would ask the court to consider comparing the bullet points there with the bullet points in paragraph 69. Yeah, I know they're the same. I mean, I've got it right here in front of me. But before that, there's a bunch of other paragraphs under CROA that are different. That's right. Right. Well, let's go to the one immediately before, and that would be 55 and 68. Those are literally identical, not just overlapping. Good word, but they're literally the same. And as regards CROA, 64 to 67, that talks about what CROA requires. So we're kind of just talking about what the law says there. I don't think it's terribly important. And in 37 to 43, we talk about the ways in which this is a credit. It's One Tech. It's a credit repair organization, at least we think. And you know what we're doing there is we're cribbing from the website, and we're introducing there exactly the kinds of facts and statements that in our ICFA claim we're going to say, this defendant intended the plaintiff, Thorby, to rely upon. So my proof, my direct examination, I'm going to get a twofer out of this. I'm going to ask her, and I think I'm going to knock out the elements one after another with a single question for each. That's the spirit anyway. I understand. Ma'am, gentlemen, that's what I wanted to talk to you about today. Happy to answer any questions, of course. And I also want to thank you for your time. And if you have, otherwise I'll sit down. Good. Thank you very much. Thank you. Mr. Hubbard, rebuttal. Thank you, Your Honor. Just a few quick points. First, the U.S. Supreme Court in 2012 in the CompuCredit case, that's 565. U.S. 95 held that pro claims are arbitrable. And the 11th Circuit in the Picard case confirmed, Judge Costa, that that is a question for the arbitrator. And now, as to the question about should we look at revival, should we look at whether there's a new claim, whether there's a new claim is important because the plaintiff is the master of her complaint. And under Forbie's theory, a defendant would have to identify all possible claims that could have been but weren't pleaded and then move to compel the unpleaded claims to arbitration, as the 11th Circuit explained in the Collado case. That doesn't make a lot of sense. And again, if there's, you know, if we look at . . . And the reason that doesn't make sense is if we look at what waiver is is a concept, right, is the knowing and intentional relinquishment of a known right. And so we don't know what claims are in the case but for the claims that a plaintiff alleges. And as this Court has made clear repeatedly, the purpose of the Federal Arbitration Act is to enforce private arbitration agreements even if the result is piecemeal litigation. To the extent Ms. Forbie doesn't want to litigate in two different forums, there's nothing preventing her from agreeing to litigate her Illinois Act claim in arbitration with Wintec. Mr. Hubbard, do I read my notes right from the briefs? Four circuits allow revivals of the arbitration right or was it just four cases? I believe there were at least four cases in four different circuits. Four different circuits. Yes, Your Honor. And our view is that the revival question is actually a different question, right? If you look at the Krinsk case out of the Eleventh Circuit, there's no dispute that it is the same claim, the same cause of action alleged. The class just got much broader. And the Eleventh Circuit later in the Collado decision actually distinguished Krinsk on that ground saying that the plaintiff there did not plead any new claims. And the court said in that context, right, in the context, it is more accurate to talk about – it was not accurate to talk about waiver and whether the claim is – whether the right to arbitrate is revived, but about whether the judicial process has been invoked in the first place. And so, Your Honors, in sum, this court should reverse and compel Forbee's newly asserted claims under the federal Corolla to arbitration. As we've talked about, those claims simply have not been litigated. And as this court has made – and Forbee has not and cannot show prejudice. Again, as this court has made clear, the prejudice inquiry is – asks whether the defendant has litigated an issue and then seeks to compel that same issue to arbitration. That's simply not the case with these federal Corolla claims. If there are no questions, I'm happy to yield the rest of my time to the court. Okay. Thank you. Thank you, Your Honors.